In the Matter of the Estate of NAT LEVINE, Deceased.*

ANNA LEVINE and Another, as Executors, etc., of NAT LEVINE, Deceased, Appellants; PUCKHAFER & RODE, a Partnership Composed of GEORGE J. PUCKHAFER and HENRY J. RODE, Respondents.

First Department, March 13, 1936.

* Affg. 154 Misc. 700.

*Meyer Kreeger*, for the appellants.

*Addison S. Pratt* of counsel [*Blackman, Pratt & King*, attorneys], for the respondents.

COHN, J. This is an appeal from a decree entered in a proceeding instituted under section 231-a of the Surrogate's Court Act, adjudging that respondents are entitled to an attorney's charging lien upon certain judgments recovered by them in the United States Customs Court, the proceeds of which are now in the hands of the appellants, who are the executors of the estate of Nat Levine, deceased.

In January, June and July of 1923, upon the request of Nat Levine, a merchant, the firm of Comstock & Washburn, predecessors of respondents, filed protests in the United States Customs Court in connection with alleged overpayments of customs duties upon importations by Levine of certain millinery material known as visca braid.

Several years later and on July 25, 1927, Nat Levine signed a formal written retainer engaging respondents " to protest against, recover and collect all excessive duties levied upon " importations

concerning which the attorneys " have lodged or may hereafter lodge " protests in his behalf. For their services they were to be paid fifty per cent of each amount " recovered, allowed or saved," and if there were no recovery, nothing was to be paid. Through the efforts of respondents, refunds in the sum of $3,138.90 were allowed in October, 1933. In the interim and on May 25, 1933, Nat Levine had died, but respondents had no knowledge of the death until some time in the year 1934. Letters testamentary were issued to appellants in January, 1934, and the refunds were paid to them by the Collector of Customs in April of that year.

The proceedings in the Customs Court were proceedings *in rem* and not *in personam*. The tax on the imported merchandise was the fund in dispute and the death of Levine did not, in any manner, alter the status of the litigation, nor did it necessitate the substitution of his representatives in the Customs Court.

The appellants now assert that the decree of the surrogate allowing respondents' claim for fifty per cent of the refunds recovered was erroneous because (1) there was no competent proof of the execution of the contract of employment between the decedent and respondents; (2) any services rendered after the death of Levine were gratuitous, and petitioners, if entitled to any fee, should be paid on a *quantum meruit* basis to be fixed at a much smaller sum than the amount set forth in the contract.

Appellants upon this appeal urge that the written contract of retainer should not have been received in evidence because proof as to Levine's signature thereon was improperly adduced through the testimony of Thomas J. McGrath, a customs broker, and Henry J. Rode, one of the attorneys associated with respondents. It is claimed that under section 347 of the Civil Practice Act, McGrath and Rode were disqualified to testify to personal transactions with the deceased, as they were interested in the outcome of the litigation. However, this point was not raised by any of the objections taken at the hearing before the surrogate and must, accordingly, be deemed waived; for proof of the existence of the contract of employment could undoubtedly have been established from other sources if appropriate objections to this evidence had been made. To preserve a point for consideration by an appellate court it is necessary to interpose a proper objection which raises the point. (*Hecla Powder Co.* v. *Sigua Iron Co.*, 157 N. Y. 437.) When evidence is received under a general objection, the ruling will not be held erroneous unless there is some ground which could not have been obviated had it been specified, or unless the evidence in its essential nature is incompetent. (*Wightman* v. *Campbell*, 217 N. Y. 479, 482; *Hoag* v. *Wright*, 174 id. 36, 39, 40; *Cross* v. *Cross*, 222 App. Div. 791.)

It is undoubtedly the law that the authority of an attorney to act for his client ceases upon the death of the client (*Austin* v. *Monroe*, 4 Lans. 67; affd., 47 N. Y. 360; *Matter of Dunn*, 205 id. 398, 403), and the agency is terminated even though no notice of the death be given to the attorney. (2 Mechem Law of Agency, § 2316, p. 1904.) However, it has also been held that an attorney's right to compensation will not be affected by the death of his client where it has become vested by substantial performance. (2 Thornton Attorneys at Law, § 455; *Wylie* v. *Coxe*, 15 How. [U. S.] 415; *Price* v. *Haeberle*, 25 Mo. App. 201; *Labauve Succession*, 34 La. Ann. 1187. Cf. also, *Matter of Agee*, 69 Utah, 130; 252 P. 891; *Matter of Mallory*, 99 Cal. App. 96; 278 P. 488.)

The ultimate award directing refund of the excessive payments involved here was dependent upon an interpretation by the United States Customs Court of certain provisions of the Tariff Act of 1922 (Chap. 356, 42 U. S. Stat. at Large, 858), appropriately presented in test cases which were being litigated. In the first of these cases, decided February 14, 1933, more than three months before Levine died, the Customs Court held that braid composed of cellulose filaments was dutiable at the rate of sixty per cent *ad valorem*, as claimed by respondents, and not at the ninety per cent rate which the government had assessed. It was then stipulated between respondents and the government that the decedent's visca braid was " similar in all material respects to the cellulose filaments;" and it was further agreed that the record in the test case be submitted as the proof upon which the protests affecting decedent's merchandise were to be decided. By this arrangement with the Federal authorities it was then established that the merchandise of the decedent would be dutiable at the lower rate. Following the determination in the test case and upon the stipulations, the Customs Court in October, 1933, granted judgments sustaining protests of overpayments and ordering the refunds on the decedent's merchandise. After the decision in the test case the recovery to the decedent and, consequently, the fee to be paid out of it to respondents, were definitely assured.

It is true that the actual decision was not rendered until after Levine had died, but obviously this disposition followed as a matter of course.

There was here then such substantial performance of the contract before Levine's death had terminated the relation of attorney and client that respondents' right to the stipulated fee had become fixed and vested. The litigation involving the refunds had been under the supervision and direction of respondents for over ten years before Levine had died. Their services commenced in Janu-

ary, 1923, which was the date of the first employment, and continued up to May 25, 1933, the date of decedent's death. During this period the respondents pressed the claims for the excessive payments, rendered all incidental service, and, as the learned surrogate expressed it, " put in motion the processes which eventually resulted in the judgments upon which collection has been made." All the ground work requisite for the successful determination of the decedent's claim had been performed before the agency had ended. That this is so was conceded by appellants' attorney at the hearing before the surrogate, when, upon a motion to dismiss the petition of the respondents, he made this statement: " Mr. Kreeger: I renew my motion upon the plaintiff's case for the dismissal of the petition herein on the ground *it affirmatively appears all of the services rendered were rendered during the lifetime of the decedent,* that the agreement, if any, was entered into with the decedent." (Italics ours.)

In view of the proof by respondents of substantial performance of their contract before the death of their client had dissolved the contract of employment, we are of the opinion that in all the circumstances of this particular case, respondents' right to the agreed compensation had become vested.

As the professional services were rendered in a special proceeding brought in the United States Customs Court, a forum held to be a judicial tribunal (*Brooks* v. *Mandel-Witte Co.,* 54 F. [2d] 992), the fund in possession of the executors recovered solely as the result of the attorneys' efforts, may properly be impressed, under section 475 of the Judiciary Law, with respondents' charging lien in the full sum of $1,569.45, with interest from the 12th day of April, 1934.

The decree should be affirmed, with costs and disbursements.

MARTIN, P. J., O'MALLEY, UNTERMYER and DORE, JJ., concur.

Decree affirmed, with costs.