In re LAMBERT IMPLEMENT COMPANY, INC., Debtor.

In re Earl & Genevive WILSON, Debtors.

In re Robert & Rebecca BROWN, Debtors.

In re Larry & Judy BROWN, Debtors.

In re Patsy Moore HANCOCK, Debtor.

In re Charles & Betty HANCOCK, Debtors.

In re William & Bette HANCOCK, Debtors.

In re Kenneth & Marlene HAWKS, Debtors.

In re Tolbert Franklin JOHNSON, Debtor.

In re Janet WEISER f/d/b/a Cumberland Lodge Motel, Debtor.

In re Russell & Joan MANNING, Debtors.

In re Ottrell & Ruby Mae SHELTON, Debtors.

In re Harold & Deborah Arlene HENDERSON, Debtors.

In re Thomas Wells & Lois Sue FARRIS, Debtors.

Bankruptcy Nos. 48200306, 18400252, 18400231, 18400232, 18400279, 18400277, 18400276, 18300533, 18400240, 18200602, 48400179, 48400151, 48400021 and 48400081.

United States Bankruptcy Court, W.D. Kentucky.

Dec. 6, 1984.

Henry Dickinson, Glasgow, Ky., Trustee in Nos. 18400252, 18400231, 18300232, 18400279, 18400277, 18400276, 18300533, 18400240 and 18200602.

Rhonda Taylor, Owensboro, Ky., Trustee in No. 48200306.

Russ Wilkey, Owensboro, Ky., Trustee in Nos. 48400179, 48400151, 48400021 and 4840081.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

■ For the third time in recent days the court's attention is drawn to trustee practices in bankruptcy liquidation cases.[1] The present matters are consolidated for consideration of the single legal issue shared by them, which is a trustee's entitlement to a statutory commission and expenses upon the sale of fully secured property. The issue is not a new one. We hold again that there is no such entitlement.

In fourteen cases before the court, trustees have moved at the completion of their duties for the allowance of commissions and expenses, or have petitioned during administration of the case for approval of interim disbursements following sales of estate property.

The cases share these characteristics: (a) There were no appraisals in the files indicating substantial equity in properties which subsequently were sold; (b) sales were conducted with routinely conferred court approval;[2] (c) secured claimants were to receive all or substantially all of the funds in the hands of the trustee, after payment of the trustee's commission and expenses of sale, and (d) the trustee's commissions were computed according to the formula described in 11 U.S.C. § 326, but the base figure included disbursements to secured creditors.

■ Distributions to secured creditors should be specifically excluded from the base figure of total disbursements upon which the trustee's commission is computed. This principle has been restated by this court on several recent occasions, formally and informally. Even expenses of secured property sales are denied to trustees, with a single exception not apparent in any of the pending cases.[3]

*In re B & L Enterprises, Inc.*[4], a 1982 opinion written by Judge Brown of this court, disallowed a trustee's commission on the proceeds of a sale of secured inventory, where the trustee and the secured creditor had cooperatively conducted the sale. Two months later, in a case having similar facts, Judge Brown again rejected the practice,

---

1. *In re Jebco*, 44 B.R. 81 (1984) held that an attorney-trustee is not entitled to compensation *as an attorney* for the performance of certain routine trustee duties which were enumerated in the opinion. *In re Offutt*, 45 B.R. 80 decided by Judge Brown on Nov. 14, 1984, rejected a standard "boiler plate" application by a trustee to employ himself as attorney without specifically justifying the necessity for the employment.

2. One of the cases deals not with sale proceeds, but with the collection of rents by a trustee and a disbursement, less commissions, to a landlord secured by an assignment of rents. Even more than the cases involving sales, that case shows a community of interest between trustee and secured creditor that creates a conflict.

3. Section 506(c) of the Bankruptcy Code allows trustee recovery of the "reasonable, necessary costs and expenses of preserving, or disposing of, such [secured] property *to the extent of any benefit to the holder of such claim*". (Emphasis added). Section 506(c) addresses only costs and expenses, not commissions. There must be a benefit to secured claimant over and above that which he could have realized by enforcing his own security. Ordinary costs of liquidation would not qualify. An example of expenses that *would* qualify for § 506(c) treatment would be those incurred in a trustee's prompt disposition of perishable commodities.

4. 26 B.R. 220 (Bkrtcy.W.D.Ky.1982).

this time characterizing the issue in more forceful language:

At issue is whether the trustee, while serving in her official capacity as such, may serve as the handmaiden of consenting secured creditors in the collection of their security and thereafter be entitled to statutory compensation for such services.[5]

*In re Crisp* articulates the policy reason for refusing to reward consensual agreements between trustees and secured creditors, which "could impose upon the Court the duty to serve as a foreclosure or collection forum", and could even give an appearance of "official sanction to this form of accommodation".[6]

But regardless of whether a sale is the result of private agreement between a trustee and secured creditors—and there is nothing in these files to indicate any such agreements—the rule against trustee compensation stands. Bluntly put, a trustee "is not entitled to collect his commission from secured property administered in bankruptcy".[7] The Fifth Circuit and numerous bankruptcy courts besides our own have so held.[8]

If the case law on the point is not enough to discourage the practice, there is another consideration, far more persuasive in its practical implications, that should serve to focus the minds of trustees and judges.

Our files from time to time come under the unforgiving eye of the federal auditor. Some time ago, after having declared through *Crisp* that such commissions were not allowable but with trustees continuing to informally urge their acceptance, we made inquiry of the Administrative Office of the United States Courts as to whether such commissions would withstand a federal audit. By letter dated September 7, 1983, the office of Counsel to the AO Division of Bankruptcy took the unequivocal position that:

... the trustee as representative of the estate should not (under usual circumstances) be engaging in activities such as the sale of fully secured property where there is no potential equity for general creditors and with the trustee enhancing his compensation with no corresponding benefit to the general estate ....

Aside from the legal basis which supports abandonment, where there will be no equity for general creditors, there is a substantial problem which the court should put a quick end to, when the trustee appears to be acting in his own self-interest rather than in the interest of the estate.[9]

To use the language of the AO advisory letter, this opinion, being our third on the subject, may not be a "quick end" to the practice, but we believe nevertheless that it will be the end. Denial of compensation in individual cases is a serious matter to both judge and trustee, but not nearly so serious as an official demand from higher fiscal authority for a refund of improper disbursements and removal from the trustee panel for cause.

In accordance with the foregoing, it is hereby ORDERED that the trustee commissions and expenses requested in each of the within fourteen cases are hereby DENIED.

There may be special circumstances or conditions in some of these cases that do not appear on a strict reading of the record. For example, trustees may have had some sound but undocumented reasons for proceeding with the disposition of properties in the expectation of benefit to unsecured creditors. Taking into account the realities of case administration, we therefore invite such of these trustees as may wish to do so to present any special circum-

---

5. *In re Crisp,* 26 B.R. 274, 275 (Bkrtcy.W.D.Ky. 1982).

6. *Id.*

7. *In re Truitt,* 5 C.B.C.2d 532, 15 B.R. 169 (N.D. Ga.1981).

8. *See* numerous cases cited in *In re B & L Enterprises, Inc.,* supra note 4.

9. Copies of the letter were promptly supplied to those trustees who had raised the question.

stances or conditions to the court for its consideration. For that reason, the within order will become a final one on January 1, 1985, to allow time for exceptions.